E-FILED
Monday, 25 August, 2025  03:17:15 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | |
|---|---|
| FULL SERVICE HOSPITALITY, LLC and TOWER CAPITAL GROUP, LP,<br><br>                      Plaintiffs,<br><br>v.<br><br>AFFILIATED FM INSURANCE COMPANY,<br><br>                    Defendant. | Case No. 3:25-03172-CRL-DJQ<br><br><br>Jury Trial Demanded |

## DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS TO PLAINTIFFS' COMPLAINT

Defendant, Affiliated FM Insurance Company ("Affiliated FM"), by and through its attorneys, and for its Answer and Affirmative Defenses to Plaintiffs' Complaint, states as follows:

1. Plaintiffs bring this action for damages resulting from Defendant's breach of contract and bad faith and unreasonable and vexatious delay in settling Plaintiffs' claim. Each cause of action arises out of Defendant's mishandling of Plaintiffs' claim after a vandalism event caused significant property damage and business interruption losses and extra expenses.

**ANSWER:**

Affiliated FM admits that Plaintiffs have filed this action, and that vandalism caused damage. Affiliated FM denies the remaining allegations in Paragraph No. 1, and further states that Affiliated FM has not breached its contract, has not engaged in any bad faith or delay in investigating Plaintiffs' claim, and has not mishandled Plaintiffs' claim.

2. Plaintiff, Full Service Hospitality, LLC ("Full Service"), is a Texas limited liability company with its principal place of business located at 128 Westcourt Lane, San Antonio, Texas 78257.

**ANSWER:**

Affiliated FM lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph No. 2 and therefore denies the same.

3.    Full Service has one member, Al Rajabi, who is a citizen and resident of San Antonio, Texas.

**ANSWER:**

Affiliated FM lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph No. 3 and therefore denies the same.

4.    Plaintiff, Tower Capital Group, LP ("Tower"), is a Texas limited partnership with a principal place of business located at 128 Westcourt Lane, San Antonio, Texas 78257.

**ANSWER:**

Affiliated FM lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph No. 4 and therefore denies the same.

5.    Tower has a general manger (sic), Al Rajabi, who is a citizen and resident of San Antonio, Texas.

**ANSWER:**

Affiliated FM lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph No. 5 and therefore denies the same.

6.    Tower has a limited partner, Tower GP, LLC, a Texas limited liability company.

**ANSWER:**

Affiliated FM lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph No. 6 and therefore denies the same.

7.      Tower GP, LLC is a Texas limited liability company with its principal place of business located at 128 Westcourt Lane, San Antonio, Texas 78257.

**ANSWER:**

Affiliated FM lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph No. 7 and therefore denies the same.

8.      Tower GP LLC has one member, Al Rajabi, who is a citizen and resident of San Antonio, Texas.

**ANSWER:**

Affiliated FM lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph No. 8 and therefore denies the same.

9.      Defendant, Affiliated FM Insurance Company ("Affiliated FM"), is a Rhode Island corporation with its principal place of business located at 270 Central Avenue, Johnston, Rhode Island 02919.

**ANSWER:**

Affiliated FM admits the allegations in Paragraph No. 9.

10.     For purposes of diversity jurisdiction, Full Service is a citizen of Texas.

**ANSWER:**

Assuming the allegations regarding its member are correct, Affiliated FM admits the allegations in Paragraph No. 10.

11.     For purposes of diversity jurisdiction, Tower is a citizen of Texas.

**ANSWER:**

Assuming the allegations regarding its manager and member are correct, Affiliated FM admits the allegations in Paragraph No. 11.

3

12.     For purposes of diversity jurisdiction, Affiliated FM is a citizen of Rhode Island.

**ANSWER:**

Affiliated FM admits the allegations in Paragraph No. 12.

13.     This Court has jurisdiction over the matter pursuant to 28 U.S.C. §1332 because this is a civil action between citizens of different states and the amount in controversy is in excess of sum of $75,000.00, exclusive of costs and interest.

**ANSWER:**

Assuming the allegations of the citizenship of Plaintiffs are correct, Affiliated FM admits the allegations in Paragraph No. 13.

14.     Venue is proper in the Central District of Illinois, Springfield Division pursuant to 28 U.S.C. §1391 insofar as Defendant operates and transacts business in this judicial district and the events giving rise to Plaintiffs' claims occurred within this District.

**ANSWER:**

Affiliated FM admits the allegations in Paragraph No. 14.

15.     Plaintiffs own the Wyndham Hotel Springfield City Centre ("Hotel") located at 700 East Adams Street, Springfield, Illinois 62701.

**ANSWER:**

Affiliated FM lacks knowledge or information sufficient to form a belief as to whether one or both of the Plaintiffs owns the Hotel, and therefore denies the same.

16.     The Hotel is a 369-hotel room and 27-apartment unit, 30-story building in a prime location in downtown Springfield, Illinois, a busy state capital and major convention destination.

**ANSWER:**

Affiliated FM admits the allegations in Paragraph No. 16.

17.    The Hotel is the largest hotel and tallest building in Springfield, Illinois.

**ANSWER:**

Affiliated FM admits the allegations in Paragraph No. 17.

18.    The Hotel has a full Starbucks, over 50,000 square feet of meeting space and retail shops, and over 535 parking spaces.

**ANSWER:**

Affiliated FM admits the Hotel has a Starbucks, meeting space and retail shops, and parking spaces.  Affiliated FM lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph No. 18 and therefore denies the same.

19.    The Hotel regularly hosts large groups of people for meetings, parties, and accommodations and also hosts numerous persons attending events at the Bank of Springfield Center, a convention center, and other events in and around Springfield, Illinois in need of accommodations.

**ANSWER:**

Affiliated FM admits that the Hotel has hosted groups of people in the past.  Affiliated FM lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph No. 19 and therefore denies the same.

20.    At most times, the Hotel is booked to full capacity for various large group meetings, parties, and personal accommodations.

**ANSWER:**

Affiliated FM lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph No. 20 and therefore denies the same.

21.    On March 27, 2025, an unidentified person or persons vandalized the Hotel causing extensive property damage (the "Event").

**ANSWER:**

Affiliated FM admits that a person or persons vandalized the Hotel causing property damage on March 27, 2025, some of which was extensive.  Affiliated denies the remaining allegations in Paragraph No. 21.

22.    Fortunately, there were no fatalities or other personal injuries.

**ANSWER:**

Affiliated FM admits the allegations in Paragraph No. 22.

23.    The Event caused significant property damage to, including, but not limited to, the Hotel's six (6) passenger elevators; passenger elevator controllers and other elevator equipment; water heater piping; boiler/vessel control wires; jockey pumps; and building automation system ("BAS") panel.

**ANSWER:**

Affiliated FM admits that the vandalism on March 27, 2025 caused property damage to, including, but not limited to, the Hotel's six (6) passenger elevators; passenger elevator controllers and other elevator equipment; water heater piping; boiler/vessel control wires; jockey pumps; and building automation system ("BAS") panel.  Affiliated FM denies the remaining allegations in Paragraph No. 23.

24.    The Event also caused significant water damage to the Hotel's restaurants, meeting rooms, banquet rooms, hotel rooms, apartment units, and common spaces located on the majority of the Hotel's thirty (30) floors which required the removal of water and will require (among other

things) the replacement of electrical equipment, drywall, plaster, wallpaper, carpet and tile in the future.

**ANSWER:**

Affiliated FM admits that the vandalism on March 27, 2025, caused water damage to certain portions of the Hotel, in particular, certain restaurants, meeting rooms, banquet rooms, hotel rooms and apartment spaces. Affiliated FM denies that the vandalism caused water damage to the majority of the Hotel's 30 floors. Affiliated FM denies that vandalism caused water damage to apartment units. Affiliated FM admits that water was removed and will require repair or replacement of certain electrical equipment, drywall, plaster, wallpaper, carpet and tile. Affiliated FM denies the remaining allegations in Paragraph No. 24.

25.    The Hotel's six passenger elevators are inoperable.

**ANSWER:**

Affiliated FM admits that the Hotel's six passenger elevators are inoperable, meaning that they were not working.

26.    The Hotel's elevators are inoperable due to the Event.

**ANSWER:**

Affiliated FM admits the Hotel's six passenger elevators are inoperable, meaning that they are not working, due to the vandalism on March 27, 2025.

27.    On March 28, 2025, the Hotel was closed by the State Fire Marshall and the Springfield Fire Department Fire Safety Division for not meeting the code standards due to non-working elevator and out-of-service fire alarm, sprinkler systems, and water lines.

**ANSWER:**

Affiliated FM admits the Hotel was closed by the State Fire Marshall and/or the Springfield Fire Department after the vandalism on March 27, 2025, but that the restaurant on the 1st floor area and Starbucks coffee shop were allowed to stay open for business as long as a fire watch was being conducted during all hours of operation. Affiliated FM lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph No. 27, in particular, as to all the reasons for the closure, and therefore denies the same.

28.     Plaintiffs have been forced to cancel the numerous large group and other reservations the Hotel had on the books following the Event leading to considerable business income losses and extra expenses.

**ANSWER:**

Affiliated FM lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph No. 28 and therefore denies the same.

29.     The Springfield Convention & Visitors Bureau has been trying to develop a contingency plan for impacted conventions, meetings, and events that are now unavailable due to the Event.

**ANSWER:**

Affiliated FM lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph No. 29 and therefore denies the same.

30.     At this time, it is unclear how long the Hotel will remain closed.

**ANSWER:**

Affiliated FM lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph No. 30 and therefore denies the same.

31.    At this time, experts predict that the Hotel may be closed 12 to 18 months in order to address the substantial replacement and repair work that is required to make the Hotel operational and safe for guests.

**ANSWER:**

Affiliated FM lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph No. 31 and therefore denies the same.

32.    The closure of the Hotel for such a significant period of time will cause Plaintiffs to suffer further business income and losses and extra expenses of multiple millions of dollars.

**ANSWER:**

Affiliated FM lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph No. 32 and therefore denies the same.

33.    Plaintiffs have suffered losses and will continue to suffer losses from (among other things) the lost sales opportunities to rent hotel rooms, apartment units, meeting spaces, retail shops, and parking spaces, and lost sales from its Starbucks and restaurants.

**ANSWER:**

Affiliated FM lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph No. 33 and therefore denies the same.

34.    Prior to the Event, Plaintiffs purchased a property insurance policy from Affiliated FM.

**ANSWER:**

Affiliated FM admits the allegations in Paragraph No. 34.

35.    Specifically, Plaintiffs purchased a property insurance policy against ALL RISKS OF PHYSICAL LOSS OR DAMAGE from Affiliated FM, Policy No. 1134905, for the policy

period of June 30, 2024 to June 30, 2025 ("Policy").  A copy of the Policy, subject to verification

for completeness is discovery, is attached hereto as **Exhibit A.**

**ANSWER:**

> Affiliated FM admits the allegations in Paragraph No. 35.

36.    Plaintiffs paid considerable premiums in exchange for the Policy.

**ANSWER:**

> Affiliated FM admits the premiums were paid in exchange for the Policy.

37.    The Policy provides a total limit of liability of $230,788,864.00.

**ANSWER:**

> Affiliated FM admits the allegations in Paragraph No. 37.

38.    Plaintiffs (among others) are Named Insureds on the Policy.

**ANSWER:**

> Affiliated FM admits the allegations in Paragraph No. 38.

39.    The Policy insures five locations in Illinois and Arkansas, including the Hotel in

Springfield, Illinois.

**ANSWER:**

> Affiliated FM admits the allegations in Paragraph No. 39.

40.    The Policy provides coverage for (among other things) damage to property and

equipment, including, but not limited to, damage for acts vandalism.

**ANSWER:**

> Affiliated FM admits the Policy is subject to its terms, conditions, exclusions, limits and
>
> other provisions, and not otherwise.  Affiliated FM further states that there is no coverage under
>
> the Policy for damage for acts of vandalism if they were intentionally caused by Mr. Rajabi, if Mr.

10

Rajabi colluded with others to cause the damage, and/or if the damage was caused by other individuals with the knowledge of Mr. Rajabi. Nor is there coverage if the misrepresentation and fraud provision applies. Affiliated FM denies any allegations of Paragraph No. 40 that are inconsistent with the terms of the Policy.

41.    The Policy also provides coverage for (among other things) lost business income and extra expense.

**ANSWER:**

Affiliated FM admits the Policy is subject to its terms, conditions, exclusions, limits and other provisions, and not otherwise. Affiliated FM further states that there is no coverage under the Policy for damage for acts of vandalism if they were intentionally caused by Mr. Rajabi, if Mr. Rajabi colluded with others to cause the damage, and/or if the damage was caused by other individuals with the knowledge of Mr. Rajabi. Nor is there coverage if the misrepresentation and fraud provision applies. Affiliated FM denies any allegations of Paragraph No. 41 that are inconsistent with the terms of the Policy.

42.    Following the Event, Plaintiffs timely submitted a claim to Affiliated FM.

**ANSWER:**

Affiliated FM admits Plaintiffs timely submitted the loss to Affiliated FM.

43.    Following the Event, Affiliated FM has requested numerous types of information and documents from Plaintiffs.

**ANSWER:**

Affiliated FM admits that after the vandalism on March 27, 2025, it requested numerous types of information and documents from Plaintiffs.

44.     Plaintiffs have complied with Affiliated FM's requests for information and documents and employee interviews, and Plaintiffs will continue to cooperate with Affiliated FM and provide requested information, documents, and employees for interviews.

**ANSWER:**

Affiliated FM admits that Plaintiffs have complied with some of Affiliated FM's requests for information and documents, have complied with the requests for employee interviews, and that, after Plaintiffs filed suit, they continued to cooperate with Affiliated FM, including providing certain information, documents, and employees for interviews under oath.

45.     Following the Event, Plaintiffs and Hotel management met with Affiliated FM's claim representative and personnel from mitigation companies retained by Affiliated FM at the Hotel in order to inspect the damages and start mitigation efforts.

**ANSWER:**

Affiliated FM admits that following the vandalism on March 27, 2025, Plaintiffs and Hotel management met with Affiliated FM's claim representative and personnel from mitigation companies at the Hotel in order to inspect the damages and start mitigation efforts.  Affiliated FM denies it "retained" the mitigation companies, as they were hired by Plaintiffs.

46.     At this Hotel site visit, Affiliated FM's claim representative inappropriately informed Plaintiffs that he would be "very angry" if Plaintiffs retained a public adjustor or an attorney to assist Plaintiffs' with the adjustment of their insurance claim related to the Event.

**ANSWER:**

Affiliated FM denies the allegations in Paragraph No. 46.

47.     On April 1, 2025, Affiliated FM sent a letter to Plaintiffs outlining multiple ways in which the Event caused damage to the Hotel.  *See* **Exhibit B** (Letter dated April 1, 2025).

**ANSWER:**

Affiliated FM admits that on April 1, 2025, it sent an acknowledgement letter to Plaintiffs which set forth observations of damage and other comments based on an inspection. Affiliated FM states that the letter speaks for itself, and denies any allegations that are inconsistent with the letter. Affiliated FM states that on April 2, 2025, it sent a revised acknowledgment letter to Plaintiffs.

48.     In the Letter, Affiliated FM stated (among other things): "We will confirm applicable coverage, loss payables, deductibles, and extent of liability under the policy in a separate letter." *Id.* at 2.

**ANSWER:**

Affiliated FM admits that on April 1, 2025, it sent an acknowledgment letter to Plaintiffs which had the alleged language. Affiliated FM states that the letter speaks for itself, and denies any allegations that are inconsistent with the letter. Affiliated FM states that on April 2, 2025, it sent a revised acknowledgment letter to Plaintiffs.

49.     Despite Affiliated FM's representation made on April 1, 2025, it still has not issued a coverage position letter or make any payments to Plaintiffs pursuant to the Policy in the ***76 days that have passed since the Event*** (emphasis in Complaint).

**ANSWER:**

Affiliated FM admits that at the time Plaintiffs filed this Complaint, it had not issued a coverage position letter or made any payments. As Affiliated FM repeatedly advised Plaintiffs, its investigation was still continuing, and it was still seeking documents and information from Plaintiffs in connection with its investigation.

13

50.    Although Affiliated FM initially retained Service Master and Paul Davis to assist with mitigation efforts at the Hotel following the Event, thereby leading Plaintiffs to believe that Affiliated FM acknowledged its coverage obligations, Affiliated FM later stated that Plaintiffs themselves would need to pay the thousands of dollars in costs associated with these companies' mitigation work.

**ANSWER:**

Affiliated FM denies it "retained" Service Master and Paul Davis to assist with mitigation efforts, as Plaintiffs retained and entered into contracts with Service Master and Paul Davis, and are therefore obligated to pay them.  Affiliated FM denies the remaining allegations in Paragraph No. 50.

51.    On April 10, 2025, Affiliated FM sent a letter to Plaintiffs warning about the possible application of a Policy exclusion and condition and also cited the carve back to the exclusion which makes clear that the Policy provides coverage for acts of vandalism: "This Policy does insure acts of direct insured physical damage intentionally caused by an employee of an Insured or any individual specified in b above, and done without the knowledge of the Insured." **Exhibit C** (Letter dated April 10, 2025).

**ANSWER:**

Affiliated FM admits that on April 10, 2025, it sent a letter to Plaintiffs which contained a reservation of rights and cited to language in the Policy.  Affiliated FM denies that the language cited is properly characterized as a "carve back".  Affiliated FM states that the letter speaks for itself, and denies any allegations that are inconsistent with the letter.

52.    Despite Affiliated FM's acknowledgment that the Policy provides coverage for vandalism on April 10, 2025, it belatedly informed Plaintiffs that Affiliated FM is conducting its

14

own investigation into the cause of the Event separate and apart from the investigation by the local authorities.

**ANSWER:**

Affiliated FM never acknowledged, represented or stated to the Plaintiffs that there was coverage under the Policy for the claimed vandalism damage and denies the allegations in Paragraph No. 52 that state to the contrary.   Affiliated FM admits it informed Plaintiffs it was conducting its own separate and independent investigation.  Affiliated FM denies that it informed Plaintiffs "belatedly".

53.    Plaintiffs have repeatedly asked Affiliated FM when it will conclude its investigation and issue a complete coverage position.

**ANSWER:**

Affiliated FM admits the allegations in Paragraph No. 53.

54.    Prior to June 4, 2025, Affiliated FM's claim representative repeatedly stated that Affiliated FM's investigation is ongoing; he does not have anything to do with such investigation as others at Affiliated FM are involved; and he is uncertain when the investigation will conclude and a coverage position will be issued.

**ANSWER:**

Affiliated FM admits that prior to June 4, 2025, its claim representative repeatedly stated to the Plaintiffs that Affiliated FM's investigation was ongoing and being conducted under a reservation of rights, and that he did not know when the investigation would be completed and a coverage position issued. Affiliated FM denies the remaining allegations in Paragraph No. 54.

55.    Instead of timely conducting and concluding its own investigation and issuing a complete coverage position and payments, Affiliated FM has needlessly engaged in a "wait and

15

see" approach in purportedly conducting its own separate investigation and not bringing such purported investigation to a close to either try to generate a coverage denial or limit its losses.

**ANSWER:**

Affiliated FM denies the allegations in Paragraph No. 55.

56. Instead of timely conducting and concluding its own investigation and issuing a complete coverage position and payments, Affiliated FM has retained its own alleged specialists to either try to generate a coverage denial or limit its losses.

**ANSWER:**

Affiliated FM admits it retained consultants to assist with its investigation and denies the remaining allegations in Paragraph No. 56.

57. By at least April 2, 2025, Affiliated FM had retained MDD, a forensic accountant; Newmann Construction, a construction company, and Donnelly & Associates, an elevator consultant.

**ANSWER:**

Affiliated denies it had retained MD&D, a forensic accountant, by April 2, 2025, and denies that Newman Construction Consulting is a "construction" company. Affiliated FM admits the remaining allegations in Paragraph No. 57.

58. Instead of timely conducting and concluding its investigation and issuing a complete coverage position and payments, Affiliated FM has also elected to play the "request for needless information" game by slowly and repeatedly issuing numerous requests for information to Plaintiffs from April 2, 2025 to May 31, 2025, the great majority of which have absolutely nothing to do with the investigation into the cause of the Event and the issuance of a coverage position in connection with the Event.

**ANSWER:**

Affiliated FM admits it made requests for information to Plaintiffs and denies the remaining allegations in Paragraph No. 58.

59.     By way of example only, Affiliated FM has requested that Plaintiffs produce a "[l]ist of all renovations and repairs conducted on the premises/structure since the insured purchased the property" and "[l]ist of all damage prior to the current loss event, whether repaired or not; and all documentation of the repairs to include contracts, who completed the work, payments, receipts, etc." – without explaining the relevancy and temporal connection of the information to the Event and coverage issues related thereto. *See* **Exhibit D** (Letter dated April 24, 2025).

**ANSWER:**

Affiliated FM admits that on April 24, 2025, it sent a letter to Plaintiffs requesting certain relevant information and documentation including, but not limited to, what is alleged in Paragraph No. 59.   Affiliated FM states that the letter speaks for itself, and denies any allegations that are inconsistent with the letter.

60.     By way of further example only, Affiliated FM has requested monthly profit and loss statements; daily occupancy and revenue details reports; lists of all customers displaced; and any events/functions cancelled in connection with the Event – information related to the calculation of business income losses despite the fact that this information does not relate to the investigation into the cause of the Event and the issuance of coverage position connection with the Event.

**ANSWER:**

Affiliated FM admits that on May 30, 2025, it sent a letter to Plaintiffs requesting certain relevant information and documentation including, but not limited to, what is alleged in Paragraph No. 60. Affiliated FM states that the letter speaks for itself, and denies any allegations that are inconsistent with the letter.

61.     Instead of timely conducting and concluding its investigation and issuing a complete coverage position and payments, Affiliated FM has refused to make any advance or partial payments to the Plaintiffs.

**ANSWER:**

Affiliated FM admits it did not make any advance or partial payments to Plaintiffs because, as it repeatedly advised Plaintiffs, it was conducting an investigation under a reservation of rights. Affiliated FM denies that its investigation was untimely.

62.     Affiliated FM has refused to pay for Plaintiffs to retain their own forensic accountant to help with Plaintiffs' claim preparation even though the Policy provides coverage for Plaintiffs' claim preparation costs.

**ANSWER:**

Affiliated FM admits it advised Plaintiffs, in response to their request, that it would not agree to pay Plaintiffs to retain their own forensic accountant because Affiliated FM was investigating the claim under a reservation for rights, and that if it is determined there is no coverage under the Policy, Plaintiffs would not be entitled to recover their costs to retain a forensic accountant.

63.     On June 4, 2025 *which was 69 days after the Event*, Affiliated FM's claim representative sent a letter to Plaintiffs revealing for the first time – in direct opposition to his

repeated prior statements – that he is running the separate investigation into the cause of the Event. *See* **Exhibit E** (Letter dated June 4, 2025) (emphasis in Complaint).

**ANSWER:**

Affiliated FM admits that on June 4, 2025, it sent a letter to Plaintiffs.  Affiliated FM denies that the letter is the "first time" that Affiliated FM had advised Plaintiffs that FM was conducting its own investigation, separate from any being conducted by local authorities, and denies that the letter was in "direct opposition to repeated prior statements."

64.     In the same letter, Affiliated FM formally requested for the first time to take the recorded statements of three Hotel employees in person in Springfield, Illinois.  *See Id.*

**ANSWER:**

Affiliated FM admits the allegations in Paragraph No. 64.

65.     These same three Hotel employees were previously interviewed by local authorities immediately after the Event.

**ANSWER:**

Affiliated FM lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph No. 65 and therefore denies the same.

66.     On information and belief, Affiliated FM's purported need for recorded statements of these three Hotel employees is not based on any new information.

**ANSWER:**

Affiliated FM denies the allegations contained in Paragraph No. 66.

67.     On information and belief, Affiliated FM has not reported this claim to the Department of Insurance or any law enforcement agency as a fraudulent claim that Plaintiffs knew about before the Event took place.

**ANSWER:**

Affiliated FM admits the allegations in Paragraph No. 67.

68.    Instead of timely conducting and concluding its investigation and issuing a complete coverage position and payments, Affiliated FM failed to promptly request employee interviews in a pretextual effort to delay or deny providing coverage for Plaintiffs' claim.

**ANSWER:**

Affiliated FM denies the allegations in Paragraph No. 68.

69.    On information and belief, Affiliated FM has obtained enough information about the Event to make at least a partial determination of how coverage applies.

**ANSWER:**

Affiliated FM denies that, as of the time of the filing of the Complaint, it had enough information to make a coverage decision, as its investigation was still continuing.

70.    Plaintiffs and Plaintiffs' employees have fully cooperated with the law enforcement investigation of the event.

**ANSWER:**

Affiliated FM lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph No. 70 and therefore denies the same.

71.    Law enforcement has assured Plaintiffs that they require no further information from Plaintiffs to complete any investigation of the event.

**ANSWER:**

Affiliated FM lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph No. 71 and therefore denies the same

72.     At the time of the filing of this Complaint, no local or other authorities or Affiliated FM has suggested that their investigations have revealed any information that would alter Plaintiffs' entitlement to insurance proceeds pursuant to the Policy.

**ANSWER:**

Affiliated FM lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph No. 72 regarding local or other authorities and therefore denies the same. Affiliated FM states that prior to, at the time of the filing of the Complaint, and for a period of time thereafter, Affiliated FM was continuing to investigate the Hotel's claim under a full reservation of rights. Affiliated FM repeatedly advised the Hotel and its counsel of the same, in emails, letters and during conference calls, and Affiliated FM also provided to the Hotel, in writing, with the provisions of the Policy that may be applicable. Further, at the time of the filing of the Complaint, the Hotel knew, and had been informed, that Affiliated FM's investigation was not complete. Affiliated FM never stated, represented, or advised Plaintiffs that they were entitled to insurance proceeds under the Policy. Affiliated FM denies the allegation that the Hotel is entitled to insurance proceeds.

**COUNT ONE**
**(Breach of Contract)**

73.     Plaintiffs hereby incorporate by reference and restate all preceding Paragraphs as if fully stated herein.

**ANSWER:**

Affiliated FM incorporates by reference and restates it answers to Paragraphs 1 through 72 above for its answer to Paragraph No. 73.

74.     Plaintiffs have paid all required premiums and have complied with all policy terms and/or such compliance is excused.

21

**ANSWER:**

Affiliated FM admits that premiums have been paid and denies the remaining allegations contained in Paragraph No. 74.

75.    Plaintiffs provided timely notice to Affiliated FM of the Event.

**ANSWER:**

Affiliated FM admits the allegations in Paragraph No. 75.

76.    Plaintiffs have complied with all conditions precedent, if any, under the Policy.

**ANSWER:**

Affiliated FM denies the allegations in Paragraph No. 76.

77.    Pursuant to the Policy, Affiliated FM is obligated to provide (among other things) replacement costs for equipment, lost business income, and extra expense.

**ANSWER:**

Affiliated FM denies the allegations in Paragraph No. 77.

78.    The Event triggers coverage under the Policy, or, in the alternative, the terms and conditions of the Policy are ambiguous and must be construed in favor of providing coverage for the Event.

**ANSWER:**

Affiliated FM denies the allegations in Paragraph No. 78.

79.    Plaintiffs have demonstrated that they are entitled to replacement costs for equipment, lost business income and extra expense.

**ANSWER:**

Affiliated FM denies the allegations in Paragraph No. 79.

22

80.     Plaintiffs have repeatedly demanded a coverage position and payments for the replacement costs for equipment, lost business income, and extra expense.

**ANSWER:**

Affiliated FM admits the allegations in Paragraph No. 80.

81.     As of the date of this filing, Affiliated FM has refused and continue to refuse to issue a coverage position or to pay Plaintiffs for the replacement costs for equipment, lost business income, and extra expense.

**ANSWER:**

Affiliated FM states that prior to, at the time of the filing of the Complaint, and for a period of time thereafter, Affiliated FM was continuing to investigate the Hotel's claim under a full reservation of rights.  Affiliated FM repeatedly advised the Hotel and its counsel of the same, in emails, letters and during conference calls, and Affiliated FM also provided to the Hotel, in writing, with the provisions of the Policy that may be applicable.  Further, at the time of the filing of the Complaint, the Hotel knew, and had been informed, that Affiliated FM's investigation was not complete.  Affiliated FM never stated, represented, or advised Plaintiffs that they were entitled to insurance proceeds under the Policy.  Affiliated FM admits it had not provided the Hotel with its coverage decision nor had it provided any payments to the Hotel as of the date of the filing of the Complaint.

82.     Affiliated FM is in breach of the Policy.

**ANSWER:**

Affiliated FM denies the allegations in Paragraph No. 82.

83.     Plaintiffs have been and will continue to damage as a proximate result of Affiliated FM's breach of the Policy.

**ANSWER:**

Affiliated FM denies the allegations in Paragraph No. 83.

**COUNT TWO**

**(Violation of 215 ILCS 5/155)**

84.     Plaintiffs hereby incorporate by reference and restate all preceding Paragraphs as if fully stated herein.

**ANSWER:**

Affiliated FM incorporates by reference and restates it answers to Paragraphs 1 through 83 above for its answer to Paragraph No. 84.

85.     The acts and omissions of Affiliated FM as set forth above, and some yet to be discovered in this matter, constitute bad faith and unreasonable and vexatious delay in settling Plaintiffs' claim.

**ANSWER:**

Affiliated FM denies the allegations in Paragraph No. 85.

86.     Affiliated FM has a duty to act in good faith in the handling and payment of the claims of their insureds, Plaintiffs.

**ANSWER:**

Affiliated FM admits the allegations in Paragraph No. 86.

87.     Affiliated FM's refusal to issue a coverage acknowledgement and pay Plaintiffs' claim is not predicated upon any circumstances that furnish reasonable justification in support of Affiliated FM's refusal to pay.

**ANSWER:**

Affiliated FM denies the allegations in Paragraph No. 87.

88.    Affiliated FM's refusal to pay Plaintiffs under the Policy is arbitrary and capricious, not supported by any rational or reasonable determination process, and is done solely in its own interests.

**ANSWER:**

Affiliated FM denies the allegations in Paragraph No. 88.

89.    As stated throughout this Complaint, Affiliated FM has been conducting its own investigation into the cause of the Event for 76 days, and it refuses to advise on the status of the investigation, when it will be completed, when it will issue a coverage position, and when it will make payments to Plaintiffs.  That was arbitrary and capricious and bad faith and unreasonable and vexatious delay in settling Plaintiffs' claim.

**ANSWER:**

Affiliated FM states that prior to, at the time of the filing of the Complaint, and for a period of time thereafter, Affiliated FM was continuing to investigate the Hotel's claim under a full reservation of rights.  Affiliated FM repeatedly advised the Hotel and its counsel of the same, in emails, letters and during conference calls, and Affiliated FM also provided to the Hotel, in writing, with the provisions of the Policy that may be applicable.  Further, at the time of the filing of the Complaint, the Hotel knew, and had been informed, that Affiliated FM's investigation was not complete.  Affiliated FM never stated, represented, or advised Plaintiffs that they were entitled to insurance proceeds under the Policy.  Affiliated FM admits it had not provided the Hotel with its coverage decision nor had it provided any payments to the Hotel as of the date of the filing of the Complaint. Affiliated FM denies the remaining allegations in Paragraph No. 89.

90.    As stated throughout this Complaint, Affiliated FM purportedly has been conducting its own investigation into the cause of the Event for 76 days, and it refuses to provide

contact information for the persons at Affiliated FM who are conducting the investigation into the cause of the Event. Affiliated FM, on information and belief, has (or could have) recognized that at least some coverage applies to Plaintiffs' losses under the Policy. That course of conduct was arbitrary and capricious and bad faith and unreasonable and vexatious delay in settling Plaintiffs' claim.

**ANSWER:**

Affiliated FM states that prior to, at the time of the filing of the Complaint, and for a period of time thereafter, Affiliated FM was continuing to investigate the Hotel's claim under a full reservation of rights. Affiliated FM repeatedly advised the Hotel and its counsel of the same, in emails, letters and during conference calls, and Affiliated FM also provided to the Hotel, in writing, with the provisions of the Policy that may be applicable. Further, at the time of the filing of the Complaint, the Hotel knew, and had been informed, that Affiliated FM's investigation was not complete. Affiliated FM never stated, represented, or advised Plaintiffs that they were entitled to insurance proceeds under the Policy. Affiliated FM admits it had not provided the Hotel with its coverage decision nor had it provided any payments to the Hotel as of the date of the filing of the Complaint Affiliated FM denies the remaining allegations in Paragraph No. 90.

91. As stated throughout this Complaint, Affiliated FM purportedly has been conducting its own investigation into the cause of the Event for 76 days, and it did not need this amount of time to investigate, conclude the investigation, and report its findings for such investigation and issue a coverage position and make partial or advance payments to Plaintiffs. That was arbitrary and capricious and bad faith and unreasonable and vexatious delay in settling Plaintiffs' claim

**ANSWER:**

26

Affiliated FM states that prior to, at the time of the filing of the Complaint, and for a period of time thereafter, Affiliated FM was continuing to investigate the Hotel's claim under a full reservation of rights. Affiliated FM repeatedly advised the Hotel and its counsel of the same, in emails, letters and during conference calls, and Affiliated FM also provided to the Hotel, in writing, with the provisions of the Policy that may be applicable. Further, at the time of the filing of the Complaint, the Hotel knew, and had been informed, that Affiliated FM's investigation was not complete. Affiliated FM never stated, represented, or advised Plaintiffs that they were entitled to insurance proceeds under the Policy. Affiliated FM admits it had not provided the Hotel with its coverage decision nor had it provided any payments to the Hotel as of the date of the filing of the Complaint Affiliated FM denies the remaining allegations in Paragraph No. 91.

92.    As stated throughout this Complaint, Affiliated FM purportedly has been conducting its own investigation into the cause of the Event for 76 days, stated that another person was running the investigation instead of the lead adjuster but then contradicted those prior assertions on June 4, and it belatedly make a pretextual request to take recorded statements of certain Hotel employees in an effort to delay or deny coverage for Plaintiffs' claim. That was arbitrary and capricious and bad faith and unreasonable and vexatious delay in settling Plaintiffs' claim.

**ANSWER:**

Affiliated FM states that prior to, at the time of the filing of the Complaint, and for a period of time thereafter, Affiliated FM was continuing to investigate the Hotel's claim under a full reservation of rights. Affiliated FM repeatedly advised the Hotel and its counsel of the same, in emails, letters and during conference calls, and Affiliated FM also provided to the Hotel, in writing, with the provisions of the Policy that may be applicable. Further, at the time of the filing of the

Complaint, the Hotel knew, and had been informed, that Affiliated FM's investigation was not complete. Affiliated FM never stated, represented, or advised Plaintiffs that they were entitled to insurance proceeds under the Policy. Affiliated FM admits it had not provided the Hotel with its coverage decision nor had it provided any payments to the Hotel as of the date of the filing of the Complaint Affiliated FM denies the remaining allegations in Paragraph No. 92.

93.    As a direct and proximate result of the bad faith and unreasonable and vexatious delay in settling Plaintiffs' claim exhibited by Affiliated FM, Plaintiffs have suffered damages.

**ANSWER:**

Affiliated FM denies the allegations in Paragraph No. 93.

94.    In refusing to pay Plaintiffs' insurance claim, Affiliated FM has acted with malice, intentionally refusing reimbursement so as to purportedly avoid a claim payout of multiple millions of dollars.

**ANSWER:**

Affiliated FM denies the allegations in Paragraph No. 94.

95.    Due to Affiliated FM's malice, bad faith, and unreasonable and vexatious delay in settling Plaintiffs' claim, Plaintiffs are entitled to punitive damages under Illinois law.

**ANSWER:**

Affiliated FM denies the allegations in Paragraph No. 95.

96.    Due to Affiliated FM's malice, bad faith, and unreasonable and vexatious delay in settling Plaintiffs' claim, Plaintiffs are entitled to attorneys' fees under Illinois law.

**ANSWER:**

Affiliated FM denies the allegations in Paragraph No. 96.

WHEREFORE, Affiliated FM requests that the Court dismiss Plaintiffs' Complaint with prejudice, that judgment be rendered in favor of Affiliated FM, that Affiliated FM be awarded its fees and costs, and for such other relief as the Court deems proper.

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

The Policy contains the following Exclusion:

**C.    EXCLUSIONS**

\*\*\*

**GROUP I**: This Policy excludes loss or damage directly or indirectly caused by or resulting from any of the following regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss or damage:

\*\*\*

3.    Any dishonest act, including but not limited to theft, committed alone or in collusion with others, at any time by:

    a)    An Insured or any proprietor, partner, director, trustee, officer or employee of an Insured; or

    b)    Any proprietor, partner, director, trustee, or officer of any business or entity (other than a common carrier) engaged by an Insured to do anything in connection with property insured under this Policy.

This Policy does insure acts of direct insured physical damage intentionally caused by an employee of an Insured or any individual specified in b above, and done without the knowledge of the Insured. This coverage does not apply to any act excluded in Group I Item 2g of this Exclusions clause. In no event does this Policy cover loss by theft by any individual specified in a or b above.

(Policy, PRO AR 4100 (01/23) Pages II-III of XLII.)

The vandalism and resulting loss and damage that occurred on March 27, 2025, at the Hotel was intentionally caused by Mr. Rajabi, Mr. Rajabi colluded with others to cause the damage, and/or the damages was caused by other individuals with the knowledge of Mr. Rajabi. Accordingly, the exclusion applies and there is no coverage.

## SECOND AFFIRMATIVE DEFENSE

The Policy contains the following General Condition:

**MISREPRESENTATION AND FRAUD**

1.    This entire Policy will be void if an Insured has:

    a)  Willfully concealed or misrepresented any material fact or circumstance concerning this insurance, the subject thereof, or the interest of an Insured;

    b)  Such fact or circumstance is stated in the policy, endorsement or rider attached thereto, or in the written application therefore; and

    c)  The concealment or misrepresentation is made with the intent to deceive, or materially affected either the acceptance of the risk or the hazard assumed by the Company.

2.   This Company will not pay for any loss or damage if an Insured has:

    a)  Willfully concealed or misrepresented any material fact or circumstance concerning the loss or damage, or the interest of an Insured; and

    b)  The concealment or misrepresentation is made with the intent to deceive or materially affected the claim.

(Policy, AMF 1726 (01/23), Page IV of IV.)

There were willful misrepresentations and concealments of material fact. Mr. Rajabi represented to Affiliated FM that two individuals unknown to him were likely involved in causing the loss and were being investigated by the local police. Mr. Rajabi also represented to Affiliated FM that the loss was likely caused by disgruntled employees without his knowledge. Further, Mr. Rajabi concealed his involvement causing the damage, as well as his conduct and actions leading up to the vandalism. Finally, through his misrepresentations and concealments related to this loss, Mr. Rajabi intended to deceive Affiliated FM or materially affect the claim. Accordingly, there is no coverage.

## **THIRD AFFIRMATIVE DEFENSE**

The vandalism and resulting loss and damage that occurred on March 27, 2025, at the Hotel was intentionally caused by Mr. Rajabi, Mr. Rajabi colluded with others to cause the damage, and/or the damages was caused by other individuals with the knowledge of Mr. Rajabi. Accordingly, the doctrine of fortuity applies, and there is no coverage because the loss was not a fortuitous loss.

## FOURTH AFFIRMATIVE DEFENSE

Under Illinois law, Plaintiffs are not entitled to recover punitive damages as claimed in Plaintiffs' Prayer For Relief.

## Demand For Trial By Jury

Affiliated FM demands trial by jury.

WHEREFORE, Affiliated FM requests that the Court dismiss Plaintiffs' Complaint with prejudice, that judgment be rendered in favor of Affiliated FM, that Affiliated FM be awarded its fees and costs, and for such other relief as the Court deems proper.

## COUNTERCLAIMS

### Overview

1.      Affiliated FM Insurance Company ("Affiliated FM") brings these counterclaims against Full Service Hospitality, LLC ("Full Service") and Tower Capital Group, LP ("Tower Capital") (collectively "Plaintiffs") relating to claimed losses at the Wyndham Hotel Springfield City Centre ("Hotel") located at 700 East Adams Street, Springfield, Illinois. Al Rajabi is owner of the Hotel.

2.      The first claim involves vandalism and resulting damage at the Hotel in the early morning of March 27, 2025 (the "Vandalism Claim"). Affiliated FM conducted an extensive investigation into the Vandalism Claim.  Based on that investigation, Affiliated FM concluded that the vandalism and resulting loss and damage that occurred on March 27, 2025, at the Hotel was intentionally caused by Mr. Rajabi, Mr. Rajabi colluded with others to cause the damage, and/or the damages was caused by other individuals with the knowledge of Mr. Rajabi.  Further, there

were willful misrepresentations and concealments of material facts, with intent to deceive Affiliated FM or materially affect the claim. Accordingly, there is no coverage.

3.      During the course of investigating the Vandalism Claim, Affiliated FM learned, for the first time, that there was new information related to the Hotel's 2024 claim made to Affiliated FM relating to an alleged lightning strike and resulting power surge that purportedly occurred on March 14, 2024 (the "'Lightning' Claim"). Affiliated FM further investigated based on this new information. Affiliated FM concluded that if lightning struck the Hotel on March 14, 2024, the damage was minimal. Affiliated FM concluded that the cause of the electrical disturbances was intentional, and the vast majority of the damage claimed by the Hotel was not caused by an alleged lightning strike and resulting power surge. Affiliated FM determined that the damage was intentionally caused by Mr. Rajabi, Mr. Rajabi colluded with others to cause the damage, and/or the damages were caused by other individuals with the knowledge of Mr. Rajabi. Further, there were willful misrepresentations and concealments of material facts, with intent to deceive Affiliated FM or materially affect the claim. Further, some of the equipment that the Hotel claims was allegedly damaged as a result of the alleged lightning strike and power surge, had been damaged and out of service long before March 14, 2024. Accordingly, there is no coverage.

4.      Without knowing these facts, Affiliated FM paid the Hotel $4,054,000 for the "Lightning" Claim.

5.      There is no coverage for the Vandalism Claim and no coverage for the "Lightning" Claim. Affiliated FM seeks a judgment in its favor as to both claims, and a return of the $4,054,000 it paid to the Hotel on the "Lightning" Claim.

6.      The Court has jurisdiction over these Counterclaims pursuant to 28 U.S.C. § 1332(a)(1), as there is diversity, and the amount in controversy is in excess of $75,000.

## The Policies

7.      Affiliated FM issued a property insurance policy to the Plaintiffs, Policy No. 1134905, for the policy period of June 30, 2024, to June 30, 2025 (the "2024-2025 Policy").  A copy is attached as Exhibit A to the Complaint.

8.      Affiliated FM issued a property insurance policy to the Plaintiffs, Policy No. 118767, for the policy period of July 10, 2023, to June 30, 2024 (the "2023-2024 Policy").  A copy is attached as Exhibit A.

9.      The 2023-2024 Policy and 2024-2025 Policy contain the following exclusion:

### C.      EXCLUSIONS

\*\*\*

**GROUP I**: This Policy excludes loss or damage directly or indirectly caused by or resulting from any of the following regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss or damage:

\*\*\*

3.   Any dishonest act, including but not limited to theft, committed alone or in collusion with others, at any time by:

   c)   An Insured or any proprietor, partner, director, trustee, officer or employee of an Insured; or

   d)   Any proprietor, partner, director, trustee, or officer of any business or entity (other than a common carrier) engaged by an Insured to do anything in connection with property insured under this Policy.

This Policy does insure acts of direct insured physical damage intentionally caused by an employee of an Insured or any individual specified in b above, and done without the knowledge of the Insured. This coverage does not apply to any act excluded in Group I Item 2g of this Exclusions clause. In no event does this Policy cover loss by theft by any individual specified in a or b above.

(Policy, PRO AR 4100 (01/23).

10.     The 2023-2024 Policy and 2024-2025 Policy contain the following General Condition:

**MISREPRESENTATION AND FRAUD**

34

1. This entire Policy will be void if an Insured has:

   (a)   Willfully concealed or misrepresented any material fact or circumstance concerning this insurance, the subject thereof, or the interest of an Insured;

   (b) Such fact or circumstance is stated in the policy, endorsement or rider attached thereto, or in the written application therefore; and

   c)  The concealment or misrepresentation is made with the intent to deceive, or materially affected either the acceptance of the risk or the hazard assumed by the Company.

2. This Company will not pay for any loss or damage if an Insured has:

   a)  Willfully concealed or misrepresented any material fact or circumstance concerning the loss or damage, or the interest of an Insured; and

   b)  The concealment or misrepresentation is made with the intent to deceive or materially affected the claim.

(Policy, AMF 1726 (01/23).

## The Vandalism Claim

11.     The Hotel submitted a claim to Affiliated FM for vandalism that occurred at the Hotel on March 27, 2025, and caused damage to the Hotel.

12.     Affiliated FM conducted an investigation of the Vandalism Claim under a reservation of rights.

13.     Affiliated FM retained a private investigator to assist with its investigation.

14.     Affiliated FM and its consultants conducted numerous inspections of the Hotel and the damage due to the vandalism on March 27, 2025.  Affiliated FM and its consultants were also present during the time remediation work was being done and then after it was completed.

15.     Affiliated FM and its consultants spoke with Al Rajabi and Scott Larsen, the chief operating officer of the Hotel, in person, by phone, and via video conference, on many occasions.

16.     Affiliated FM requested documents and information from Mr. Rajabi, Mr. Larsen, and counsel for the Hotel.  These requests and questions have been in writing, as well as verbally

during video conferences.   Counsel for the Hotel has provided certain documents and information in response to those requests and questions.

17.   Affiliated FM conducted the examinations under oath of certain employees. In addition to their sworn testimony, they provided photos, text messages, screen shots and/or videos.

18.   The private investigator retained by Affiliated FM conducted an extensive investigation on behalf of Affiliated FM.   The investigation included, but was not limited to, interviewing numerous people, including former employees of the Hotel, as well as the review and analysis of documents and information. The investigator provided Affiliated FM with memorandum reports regarding each of the interviews, as well as documents obtained during the investigation.

19.   On August 4, 2025, the private investigator provided Affiliated FM with summary report, which details her investigation and findings.

20.   On August 11, 2025, Affiliated FM sent a letter to the Hotel, advising that it was denying the Vandalism Claim.   A copy is attached as Exhibit B.

### **The "Lightning" Claim**

21.   On April 16, 2024, the Hotel provided Affiliated FM with a claim for damage to equipment that occurred on March 14, 2024, when there was reportedly a storm and lightning strikes in the area that evening.

22.   The Hotel reported and stated that there was a large lightning and thunderstorm that passed through the area on the night of March 14, 2014, the Hotel's lights flickered and there was a power outage.

23.   The Hotel reported and stated that, as a result, there was damage to equipment, including burns to boards and wiring.

36

24.    The Hotel reported and stated that the equipment that was claimed to be damaged on March 14, 2024, by the alleged lightning strike and resulting power surge, included: (a) water cooled chiller systems, (b) roof top units, (c) and closed-loop water sourced heat pumps located in 67 individual guest rooms.

25.    Affiliated FM investigated the "Lightning Claim", which included site visits on May 8, 2024, and June 17, 2024, by a representative of Affiliated FM, and a consultant hired by Affiliated FM.

26.    Affiliated FM completed its investigation, and, in total, paid the Hotel $4,054,000 for the "Lightning" Claim.  Affiliated FM's payment included payment for damage to the chillers, roof top units, and water source heat pumps in the rooms.

27.    During the course of Affiliated FM's investigation of the Vandalism Claim, it uncovered new information regarding the "Lightning" Claim.  In particular, a consultant retained by FM Affiliated to investigate the damage caused by the vandalism was told in mid-April 2025 by Hotel management that the prior "Lightning" Claim was fraudulent. The consultant was advised by Hotel management that Mr. Rajabi had told the Hotel's Chief Engineer to short the roof top units and the units in the rooms to make it look like a lightning strike.  Per Hotel management, the Chief Engineer refused to do so. Further, the consultant was advised by Hotel management that when Affiliated FM was planning to come to do an inspection, the Chief Engineer, who lived at the Hotel in an apartment unit, was told to stay in his room.

28.    Affiliated FM further investigated this new information it was first provided in mid-April 2025.  This included interviews of former employees of the Hotel, who advised that they had heard, in the past, that Mr. Rajabi wanted the Chief Engineer to do electrical damage, but the Chief Engineer refused to do so.

29.     During the course of Affiliated FM's investigation of the Vandalism Claim, it requested that the Hotel provide a list of guest rooms that had not been available for use on March 27, 2025, the reason for the same, and the date each room was first taken out of service.

30.     On May 12, 2025, the Hotel provided Affiliated FM with a list, which had 87 rooms. Of the 87 rooms, the list contained 55 guest rooms that were removed from operation well before March 14, 2024, because of maintenance issues, the reason being HVAC.  None of the rooms on the list of 87 rooms were reported to have been taken out of service on March 14, 2024.

31.     As part of Affiliated FM's current investigation, former employees confirmed that the Hotel had issues with the HVACs in guest rooms for years, and none of them were repaired or replaced.  In fact, in the list the Hotel provided in May 2025, many rooms were taken out of service due to HVAC issues in 2021 (8 total in that year, the earliest being August 15, 2021, and 6 of those were later claimed to have been damaged on March 14, 2024), 2022 and 2023.

32.     Affiliated FM took the examination under oath of the Chief Engineer on July 1, 2025.  He testified, under oath, about how he was instructed, in person and phone, by Mr. Rajabi, to intentionally do damage to the electrical system before the insurance people came, and make it look like a storm caused the damage.  The Chief Engineer refused, telling Mr. Rajabi he was trying to commit insurance fraud, and that the Chief Engineer would have no part of it.

33.     The Chief Engineer also testified that he was told that when the insurance people came to inspect, he was to stay in his apartment unit in the Hotel all day, with the excuse being that his wife was ill.

34.     Affiliated FM also took the examination under oath of the Hotel manager on July 1, 2025, who provided the same information as the Chief Engineer.

38

35.     On May 8, 2024, and then again on June 17, 2024, when the adjuster from Affiliated FM and a consultant retained by it were at the Hotel and performed an inspection, the Chief Engineer was not present.  On May 8, 2024, the adjuster and consultant were told that the Chief Engineer's wife or child were ill that day.  Mr. Rajabi, and another engineer from Texas, attended the inspection on behalf of the Hotel that day.  On June 17, 2024, the adjuster and consultant were told that the Chief Engineer was not available that day.

## COUNT I
### (Declaratory Judgment – Vandalism Claim)

36.     Affiliated FM restates, realleges and incorporates by reference its allegations in Paragraphs 1 through 35 above, as if fully set forth herein.

37.     Pursuant to Rule 57 of the Federal Rules of Civil Procedure, and 28 U.S.C. § 2201(a), Affiliated FM seeks a declaratory judgment in its favor, holding that there is no coverage under the 2024-2025 Policy for the Vandalism Claim.

38.     There is an actual controversy between Affiliated FM and Plaintiffs regarding whether there is coverage for the Vandalism Claim.

39.     There is no coverage for the Vandalism Claim because the dishonest act exclusion applies.

40.     There is no coverage for the Vandalism Claim because Plaintiffs' breached the Misrepresentation and Fraud Condition.

41.     There were willful misrepresentations and concealments of material fact.

42.     Mr. Rajabi represented to Affiliated FM that two individuals unknown to him were likely involved in causing the loss and were being investigated by the local police.  Mr. Rajabi also represented to Affiliated FM that the loss was likely caused by disgruntled employees without his knowledge.

43.     Mr. Rajabi concealed his involvement causing the damage, as well as his conduct and actions leading up to the vandalism.

44.     Through his misrepresentations and concealments related to this loss, Mr. Rajabi intended to deceive Affiliated FM or materially affect the Vandalism Claim.

45.     Mr. Rajabi's misrepresentations and concealments were calculated to discourage, mislead, or deflect Affiliated FM's investigation.

WHEREFORE, Affiliated FM seeks a declaration that: (1) there is no coverage for the Vandalism Claim because the "dishonest act" exclusion applies; (2) there is no coverage for the Vandalism Claim because the Misrepresentation and Fraud policy condition language applies; and (3) for such other relief as this Court deems fair and just.

## COUNT II
### (Declaratory Judgment – "Lightning" Claim)

46.     Affiliated FM restates, realleges and incorporates by reference its allegations in Paragraphs 1 through 45 above, as if fully set forth herein.

47.     Pursuant to Rule 57 of the Federal Rules of Civil Procedure, and 28 U.S.C. § 2201(a), Affiliated FM seeks a declaratory judgment in its favor, holding that there is no coverage under the 2023-2024 Policy for the "Lightning" Claim.

48.     There is an actual controversy between Affiliated FM and Plaintiffs regarding whether there is coverage for the "Lightning" Claim.

49.     There is no coverage for the "Lightning" Claim because the dishonest act exclusion applies.

50.     If lightning struck the Hotel on March 14, 2024, the damage was minimal.  The cause of the electrical disturbances was intentional, and the vast majority of the damage claimed by the Hotel was not caused by an alleged lightning strike and resulting power surge. The damage

was intentionally caused by Mr. Rajabi, Mr. Rajabi colluded with others to cause the damage, and/or the damages were caused by other individuals with the knowledge of Mr. Rajabi.

51.    There is no coverage for the "Lightning" Claim because Plaintiffs' breached the Misrepresentation and Fraud Condition.

52.    There were willful misrepresentations and concealments of material facts, with intent to deceive Affiliated FM or materially affect the claim.

53.    The Hotel reported and stated that the March 14, 2024, lightning strike and storm caused damage to multiple chillers, roof top units, and water source heat pumps in numerous rooms.  This was not true, and the Hotel knew it was not true.  Some of the chillers and roof top units had been damaged, inoperable and/or taken out of service before March 14, 2024.  Further, the water source heat pumps in rooms had been damaged and/or taken out of service for maintenance issues long before March 14, 2024.

54.    The Hotel concealed the material facts regarding the water source heat pumps, as well as the fact that chillers and roof top units had been damaged, inoperable and/or taken out of service before March 14, 2024. The Hotel concealed the material fact that damage was intentionally caused by Mr. Rajabi, Mr. Rajabi colluded with others to cause the damage, and/or the damages were caused by other individuals with the knowledge of Mr. Rajabi.  The Hotel concealed the Chief Engineer from Affiliated FM, falsely stating to Affiliated FM and its consultants during site visits that the Chief Engineer was not available because his wife or child were ill.

55.    Affiliated FM is entitled to recoupment and recovery of the $4,054,000 paid on the "Lightning" Claim.

WHEREFORE, Affiliated FM seeks a declaration that: (1) there is no coverage for the Lightning Claim because the "dishonest act" exclusion applies; (2) there is no coverage for the Lightning Claim because the Misrepresentation and Fraud policy condition language applies; (3) recoupment and recovery of the $4,054,000, along with pre-judgment interest and costs, and (4) for such other relief as is equitable and just.

### COUNT III
**(Breach of Contract – "Lightning" Claim)**

56.     Affiliated FM restates, realleges and incorporates by reference its allegations in Paragraphs 1 through 55 above, as if fully set forth herein.

57.     The 2023-2024 Policy is an enforceable agreement between Affiliated FM and Plaintiffs.

58.     The Plaintiffs are each an Insured under the 2023-2024 Policy.

59.     The "dishonest act" exclusion and the Misrepresentation and Fraud condition in the 2023-2024 Policy constitute an agreement between the Plaintiffs and Affiliated FM to refrain from paying for losses which would be excluded by those provisions.

60.     Plaintiffs intentionally misrepresented to Affiliated FM that they were owed $4,054,000 in connection with the "Lightning" Claim.

61.     Plaintiffs concealed the involvement of Mr. Rajabi in causing or directing to cause damage that in an effort to increase the amount of insurance benefits that Plaintiffs induced Affiliated FM to ultimately pay. Plaintiffs concealed the fact that certain roof top units, chiller and water source heat pumps in rooms had been had been damaged, inoperable and/or taken out of service before March 14, 2024.

62.     In reliance upon the misrepresentations and/or concealments by Plaintiffs, Affiliated FM paid $4,054,000 to Plaintiffs for the "Lightning" Claim.

63. Plaintiffs' misrepresentations and concealment constituted a material breach of the 2023-2024 Policy.

64. As a result of Plaintiffs' breach of the 2023-2024 Policy, Affiliated FM is entitled to damages in the amount of $4,054,000.

WHEREFORE, Affiliated FM respectfully requests that this Court enter judgment in favor of Affiliated FM and against Plaintiffs in the amount of $4,054,000, along with pre-judgment interest and costs, and for such other relief as is equitable and just.

## COUNT IV
### (5/17-10.5 -- "Lightning" Claim)

65. Affiliated FM restates, realleges and incorporates by reference its allegations in Paragraphs 1 through 64 above, as if fully set forth herein.

66. 720 ILCS 5/17-10.5 provides:

(e) Civil damages for insurance fraud

(1) A person who knowingly obtains, attempts to obtain, or causes to be obtained, by deception, control over the property of any insurance company by the making of a false claim or by causing a false claim to be made on a policy of insurance issued by an insurance company, or by the making of a false claim or by causing a false claim to be made to a self-insured entity, intending to deprive an insurance company or self-insured entity permanently of the use and benefit of that property, shall be civilly liable to the insurance company or self-insured entity that paid the claim or against whom the claim was made or to the subrogee of that insurance company or self-insured entity in an amount equal to either 3 times the value of the property wrongfully obtained or, if no property was wrongfully obtained, twice the value of the property attempted to be obtained, whichever amount is greater, plus reasonable attorney's fees.

67. Plaintiffs are "persons" under 5/17-10.5(e)(1).

68. Plaintiffs knowingly obtained, attempted to obtain, or caused to be obtained, by deception, control over the property of Affiliated FM by the making of a false claim or by causing

a false claim to be made on the 2023-2024 Policy. In connection therewith, Plaintiffs intended to deprive Affiliated FM permanently of the use and benefit of that property.

69.    Affiliated FM paid $4,054,000 for the "Lightning" Claim.

70.    Under 5/17-10.5(e)(1), Affiliated FM is entitled to recover 3 times the value of the $4,054,000, or $12,162,000, as well as attorney's fees.

WHEREFORE, Affiliated FM respectfully requests that this Court enter judgment in favor of Affiliated FM and against Plaintiffs in the amount of $12,162,000, plus attorney's fees, interest and costs, and such other relief as is equitable and just.

## **Demand For Trial By Jury**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Affiliated FM demands a trial by jury.

Respectfully submitted,

By:    /s/ K. Clark Schirle
      K. Clark Schirle, Esq. (#6199270)
      Jonathan K. Barger, Esq. (#6277079)
      BUTLER WEIHMULLER KATZ CRAIG LLP
      190 S. LaSalle Street – Suite 2675
      Chicago, Illinois 60603
      (312) 456-0900
      (312) 456-0909 Facsimile
      Cschirle@butler.legal
      Jbarger@butler.legal

      *Attorneys for Affiliated FM Insurance Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing has been served on all counsel of record identified on the below Service List electronically by operation of the Court's ECF/CM system this 25th Day of August, 2025.

**Counsel for Plaintiffs**

Kevin Dreher, Esq.
Barnes & Thormburg LLP
One North Wacker Drive – Suite 4400
Chicago, Illinois 60606
kevin.dreher@btlaw.com

Carrie M. Raver, Esq.
Barnes & Thornburg LLP
888 S. Harrison Street, - Suite 600
Fort Wayne, IN 46802
Carrie.raver@btlaw.com

Scott N. Godes, Esq.
Barnes & Thornburg LLP
555 12th Street, NW
Washington, DC 20004
Scott.godes@btlaw.com

*/s/ K. Clark Schirle* _____